<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY**

*Caption in Compliance with D.N.J. LBR 9004-1(b)*
Edmond M. George, Esquire
Turner N. Falk, Esquire
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
1120 Route 73, Suite 420
Mount Laurel, NJ 08054-5108
(856) 795-3300
*Counsel to Debtors*

</td></tr>
</table>

In re:

EDWARD J. HOVATTER and KIMBERLY MACALUSO HOVATTER,

                         Debtors.

Case No. 19-31483 (ABA)

Chapter 11

Judge: Andrew B. Altenburg


## PLAN OF THE DEBTORS EDWARD J. HOVATTER AND KIMBERLY MACALUSO HOVATTER

      Debtors/Plan Proponents respectfully submit their Plan of Reorganization pursuant to Chapter 11, Title 11 of the United States Code, in the form annexed hereto and made a part hereof.


Dated: March 11, 2020           /s/ Edward J. Hovatter
                             Edward J. Hovatter

Dated: March 11, 2020           /s/ Kimberly Macaluso Hovatter
                             Kimberly Macaluso Hovatter

# TABLE OF CONTENTS

                                                                                                    **Page**

I.      INTRODUCTION ........................................................................................... 1

II.     CLASSIFICATION ........................................................................................ 1

        A.      General Overview ............................................................................  2
        B.      Definitions .......................................................................................  2
        C.      Unclassified Claims .......................................................................  8
                1.      Administrative Expenses and Fees ......................................  9
                2.      Priority Tax Claims ............................................................ 10
        D.      Classified Claims and Interests .................................................... 11
                1.      Classes of Secured Claims ................................................ 11
                2.      Priority Non-Tax Claims .................................................... 15
                3.      Class of General Unsecured Claims.................................... 15
                4.      Class of Retained Interests………………………………....... 18

        E.      Acceptance or Rejection of Plan .................................................. 18
        F.      Means of Effectuating the Plan .................................................... 19
                1.      Funding for the Plan ........................................................... 19
                2.      Post-Confirmation Management ......................................... 19
                3.      Disbursing Agent ............................................................... 19

III.    TREATMENT OF MISCELLANEOUS ITEMS ......................................... 19

        A.      Executory Contracts and Unexpired Leases ................................ 20
                1.      Assumptions ...................................................................... 20
                2.      Rejections .......................................................................... 20
        B.      Changes in Rates Subject to Regulatory Commission Approval......................... 21
        C.      Retention of Jurisdiction .............................................................. 21
        D.      Procedures for Resolving Contested Claims ................................ 22
        E.      Notices under the Plan .................................................................. 22

IV.     EFFECT OF CONFIRMATION OF PLAN .................................................. 22

        A.      Discharge ...................................................................................... 22
        B.      Revesting of Property in the Debtors.............................................. 23
        C.      Modification of Plan ..................................................................... 23
        D.      Post-Confirmation Conversion/Dismissal ................................... 23
        E.      Post-Confirmation Quarterly Fees ................................................ 24

I

# I.

## INTRODUCTION

Edward Hovatter and Kimberly Macaluso Hovatter (collectively the "Debtors") are husband and wife, and the debtors in possession in this Chapter 11 bankruptcy case. On November 14, 2019, the Debtors commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. §§ 101 *et seq*. This document is the Chapter 11 plan ("Plan") proposed by the Debtors ("Proponents"). Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the United States Bankruptcy Court for the District of New Jersey (the "Court"), and which is provided to help you understand the Plan.

This is a plan of reorganization. In other words, the Proponents seeks to accomplish payments under the Plan by the liquidation of certain of their assets including claims for recovery under state law and the Code, the sale of the Debtors' rental property in Hammonton, New Jersey and a contribution of new value by a non-Debtor trust.  The Plan contemplates current payments to certain parties, and for the payment of certain Secured Claims at the sale of the asset securing those claims, or over time.  Payments to professionals, taxes and unsecured creditors are pursuant to a "waterfall" plan, where moneys generated post-confirmation are paid out in order of priority, first to Administrative claims, then to Priority claims and them ultimately General Unsecured claims.  The Debtors will commit assets with a value equal to the Completion Amount, equivalent to their projected excess cash flow over expenses for a period of five years from the Effective Date.  The Effective Date of the proposed Plan is the date on which the order confirming the Plan becomes final.

1

# II.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    General Overview

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

### B.    Definitions

**Scope of Definitions.** For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Section of the Plan. In all references herein to any parties, persons, entities, or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

**1.    Administrative Expense** shall mean any cost or expense of administration of the Chapter 11 case allowable under Section 507(a) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtors, any actual and necessary expense of operating the business of the Debtors, any indebtedness or obligation incurred or assumed by the Debtors in connection with the conduct of their business or for the acquisition or lease of property or the rendition of services to the Debtors, all allowances of compensation and reimbursement of expenses, any fees or charges assessed against the estate of any Debtor under Chapter 123, Title 28, of the United States Code, and the reasonable fees and expenses incurred by the Proponent in

2

connection with the proposal and confirmation of this Plan.  This includes fees and costs of counsel Obermayer Rebmann Maxwell & Hippel LLP, and the Debtors' Chapter 11 accountants at Miller Coffey Tate LLP.

2.    **Affirmative Litigation** means the claims for affirmative recovery the Debtors possess against third parties, including those described in the Disclosure Statement Part II.E.

3.    **Allowed** when used as an adjective preceding the word "Claims" shall mean any Claim against of the Debtors, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of Claim against such Debtor, or, if no proof of claim or Equity Interest is filed, which has been or hereafter is listed by the Debtors as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed and such Claim has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed Claim" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Equity Interest from and after the Petition Date.

3.    **Allowed Administrative Expense** shall mean any Administrative Expense allowed under Section 507(a)(1) of the Bankruptcy Code.

4.    **Allowed Unsecured Claim** shall mean an Unsecured Claim that is or has become an Allowed Claim.

5.    **Bankruptcy Code** shall mean the Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Code.

6.    **Bankruptcy Court** shall mean the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. Section 158, the unit of such District Court constituted pursuant to 28 U.S.C. Section 151.

7.    **Bankruptcy Rules** shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. Section 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

8.    **Business Day** means and refers to any day except Saturday, Sunday, and any other day on which commercial banks in New Jersey are authorized by law to close.

9.    **Chapter 11 Case** shall mean the instant case under Chapter 11 of the Bankruptcy Code in which Edward J. Hovatter and Kim Macaluso Hovatter are the Debtors.

10.   **Claim** shall mean any right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtors whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all claims as such term is defined in Section 101(5) of the Bankruptcy Code.

11.   **Class** shall mean a grouping of substantially similar Claims for common treatment thereof pursuant to the terms of this Plan.

12.   **Code** shall mean Title 11 of the United States Code, otherwise known as the Bankruptcy Code.

OMC\4840-3933-2019.v1-3/11/20

13.    **Completion Amount** means the amount of Plan funding that complies with Sections 1129(a)(7), (a)(15) and (b)(2), as defined in the Disclosure Statement Part III.D.2.

14.    **Confirmation** shall mean the entry of an Order by this Court approving the Plan in accordance with the provisions of the Bankruptcy Code.

15.    **Confirmation Hearing** shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan.

16.    **Confirmation Order** shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

17.    **Creditor** shall mean any person that has a Claim against the Debtors that arose on or before the Petition Date or a Claim against the Debtors' estate of any kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code. This includes all persons, corporations, partnerships, or business entities holding claims against the Debtors.

18.    **Debt** means, refers to and shall have the same meaning ascribed to it in Section 101(12) of the Bankruptcy Code.

19.    **Debtors** shall mean Edward Hovatter and Kimberly Macaluso Hovatter, collectively.

19.    **Disbursing Agent** shall mean Kimberly Macaluso Hovatter or any party appointed by Debtors and subject to Court approval, which shall effectuate this Plan and hold and distribute consideration to be distributed to holders of Allowed Claims pursuant to the provisions of the Plan and Confirmation Order.

20.    **Disclosure Statement** means and refers to the Disclosure Statement filed by the Debtors as required pursuant to Section 1125 *et seq.* of the Bankruptcy Code, as amended from time to time.

5

21.  **Disposable Income** means the projected disposable income of the Debtors as defined in Section 1325(b)(2) of the Bankruptcy Code.

22.  **Effective Date** shall mean the day on which the Confirmation Order becomes a Final Order.

23.  **Final Order** shall mean an order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified, or amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect.

24.  **Funding Source** means the various sources of funding for the Plan as described in the Disclosure Statement Part III.D.3.

25.  **Hammonton Property** means 414 14th Street, Hammonton, NJ 08037, which is owned by the Debtors, and the sale of which is contemplated pursuant to this Plan.

26.  **HFSL** means the firm of Hovatter Friedman Saputelli & Levi LLP, of which debtor Edward J. Hovatter is the Managing Member.

27.  **Impaired** when used as an adjective preceding the words "Class of Claims" shall mean that the Plan alters the legal, equitable, or contractual rights of the member of that class.

28.  **New Value Contribution** means the contribution of money to the plan by the Edward J. Hovatter Irrevocable Trust in the amount determined by the Public Auction.

29.  **Person** shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any political subdivision thereof or other entity.

OMC\4840-3933-2019.v1-3/11/20

27. **Petition Date** shall mean the date on which the Debtors filed their petition for relief commencing the Chapter 11 Case.

28. **Plan** shall mean the Plan of Reorganization filed in these Proceedings, together with any additional modifications and amendments made by the Debtors from time to time.

29. **Primary Residence** means the real property at 9 E. Aberdeen Road, Ocean City NJ 08226.

30. **Priority Non-Tax Claim** shall mean a Claim entitled to priority under Sections 507(a)(2), (3), (4), (5), (6) or (7) of the Bankruptcy Code, but only to the extent it is entitled to priority in payment under any such subsection.

31. **Priority Tax Creditor** shall mean a Creditor holding a Priority Tax Claim.

32. **Priority Tax Claim** shall mean any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

33. **Proceedings** shall mean the Chapter 11 Case of the Debtors.

34. **Professional Persons** means and refers to all attorneys, accountants, appraisers, auctioneers, consultants, and other professionals retained or to be compensated pursuant to an Order of the Court entered under Sections 327, 328, 330, or 503(b) of the Bankruptcy Code.

35. **Professional Claim** means and refers to a claim by any and all professionals as provided for in Sections 327, 328, 330 and 503(b) of the Bankruptcy Code.

36. **Proponents** means Edward Hovatter and Kimberly Macaluso Hovatter.

37. **Public Auction** means the process for offering the Primary Residence for public sale subject to certain terms and conditions as described in the Disclosure Statement Part III.D.1.

7

38.     **Reorganized Debtors** means the Debtors, collectively after confirmation of the Plan.

39.     **Secured Claim** means and refers to a Claim which is secured by a valid lien, security

interest, or other interest in property in which the Debtors have an interest which has been

perfected properly as required by applicable law, but only to the extent of the value of the

Debtors' interest in such property, determined in accordance with Section 506(a) of the

Bankruptcy Code.

38.     **Unsecured Claim** shall mean any Claim against the Debtors which arose or which is

deemed by the Bankruptcy Code to have arisen prior to the Petition Date for such Debtors,

and which is not (i) a secured claim pursuant to Section 506 of the Bankruptcy Code, as

modified by Section 1111(b) of the Bankruptcy Code, or (ii) a Claim entitled to priority

under Sections 503 or 507 of the Bankruptcy Code. "Unsecured Claim" shall include all

Claims against the Debtors that are not expressly otherwise dealt with in the Plan.

39.     **Other Definitions,** a term used and not defined herein but that is defined in the

Disclosure Statement or Bankruptcy Code shall have the meaning set forth therein. The

words "herein", "hereof", "hereto, "hereunder", and others of similar import refer to the

Plan as a whole and not to any particular section, subsection, or clause contained in the

Plan. Moreover, some terms defined herein are defined in the section in which they are

used.

## C.     **Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified.

They are not considered impaired and they do not vote on the Plan because they are automatically

entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent

has <u>not</u> placed the following claims in a class. The treatment of these claims is provided below.

8

### 1.    Administrative Expenses and Fees

Administrative expenses are claims for costs or expenses of administering the Debtors' Chapter 11 case which are allowed under Code Section 503(b). Fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee were also incurred during the Chapter 11 Case. The Bankruptcy Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's unpaid administrative fees and expenses ("Compensation"), an estimate of future professional fees and other administrative claims and fees and their treatment under the Plan:

| NAME | AMOUNT | TREATMENT | TYPE OF CLAIM |
|---|---|---|---|
| Obermayer Rebmann Maxwell & Hippel LLP | $175,000.00 (estimated) | To be paid pro rata with Miller Coffey Tate LLP from the Funding Sources described in the Plan as they become available. | Counsel to the Debtors |
| Miller Coffey Tate LLP | $30,000.00 (estimated) | To be paid pro rata with Obermayer Rebmann Maxwell & Hippel LLP from the Funding Sources described in the Plan as they become available. | Accountant to the Debtors |
| Office of U.S. Trustee Fees | $350.00 (estimated) | Paid in full on Effective Date | |
| | TOTAL: $205,350.00 | | |

9

### a. Court Approval of Professional Compensation and Expenses Required:

The Bankruptcy Court must approve all professional compensation and expenses. Each professional person requesting compensation in the case pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than ninety (90) days after the Confirmation Date. Nothing herein shall prohibit each professional person from requesting interim compensation during the course of this case pending Confirmation of this Plan. No motion or application is required to fix fees payable to the Clerk's Office or the Office of the United States Trustee, as those fees are determined by statute.  Obermayer and Miller Coffey Tate LLP have agreed to be paid after the Effective Date.

### 2. Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires, and thus this Plan provides, that each holder of such a 507(a)(8) priority tax claim receives the present value of such claim in deferred cash payments, over a period not exceeding six (6) years from the date of the assessment of such tax. The Debtor owes $222,495.45 in income tax to the Internal Revenue Service for the 2017 and 2018 tax years, and $18,118.12 to the State of New Jersey for income tax for the 2017 and 2018 tax years.  Due to potential deductible losses related to the dissolution of HFSL, the Debtors may file an amended return for the prepetition periods that are in dispute, in order to lower their tax liability.  The Debtors believe this liability may be lowered.  The Debtors have hired Miller Coffey Tate in order to do so.  The Debtors will make payments from the Funding Sources as they become available, with interest at the statutory rate (currently 7.25% for New Jersey, 4.5% for the Internal Revenue Service).  To the extent these claims are reduced, available income for

10

distribution to creditors will increase, though there is no guaranty of reductions.  Any refunds in

any taxable year following the Effective Date will be first used to offset prepetition tax

liabilities.

**D.**    **Classified Claims and Interests**

    **1.**    **Classes of Secured Claims**

    Secured claims are claims secured by liens on property of the estate. The following

represent all classes containing Debtors' secured pre-petition claims and their treatment

under this Plan:

| CLASS # | DESCRIPTION | INSIDERS | IMPAIRED | TREATMENT |
|---|---|---|---|---|
| | | (Y/N) | (Y/N) | |
| **Class 1 Allowed Secured Claim of 360 Capital** | Class 1 consists of the Allowed Secured Claim of 360 Capital, to the extent allowed.  This Claim is secured by a second-position lien on the Hammonton Property.  The Claim is $54,400.08 pursuant to 360's proof of claim.  The Debtors are unsure of the value of the collateral underlying the 360 Secured Claim. | No | Yes | The Debtors has an agreement of sale for the Hammonton Property. The Debtors will make no payments until the 360 Claim is Allowed, but the Debtor will post-petition pay currently all taxes on the collateral.  If the collateral is sold, the net proceeds from the sale of the collateral will be paid to 360.  However, no interest, attorneys fee or cost will be paid. The collateral will be sold pursuant to this Plan of reorganization and shall be free of any transfer taxes. |

| CLASS # | DESCRIPTION | INSIDERS | IMPAIRED | TREATMENT |
|---------|-------------|----------|----------|-----------|
| | | (Y/N) | (Y/N) | |
| **Class 2 Allowed Secured Claim of Republic Bank** | Class 2 consists of the Allowed Secured Claim of Republic Bank based upon a third lien position for a HELOC on the Hammonton Property, based upon the Republic Bank HELOC Loan Documents, to the extent allowed. The Republic claim is $234,354.96, with prepetition arrears at $950.44 pursuant to Republic's proof of claim. The Debtors are unsure of the value of the collateral underlying the Republic Bank Secured Claim. | NO | YES | The Debtors has an agreement of sale for the Hammonton Property. The Debtors will make no payments until the Republic Bank Claim is Allowed, but the Debtor will post-petition pay currently all taxes on the collateral. If the collateral is sold, the net proceeds from the sale of the collateral will be paid to Republic Bank. However, no interest, attorneys fee or cost will be paid. The collateral will be sold pursuant to this Plan of reorganization and shall be free of any transfer taxes. |

| | | | | |
|---|---|---|---|---|
| **Class 3 Secured Claim of Shellpoint Mortgage Servicing.** | Class 3 consists of the Allowed Secured Claim Shellpoint, based upon the Shellpoint Loan Documents, to the extent Allowed. The collateral is a first priority Lien on the Primary Residence. The Shellpoint claim is listed at $1,894,628.93 and as undisputed. The Debtors are unsure of the value of the collateral underlying the Shellpoint Secured Claim. | NO | YES | The Debtors intend to retain the Primary Residence on account of the New Value Contribution.  The Debtors will cure prepetition or postpetition arrears over six (6) months from the Effective Date, if any.  The Debtor will post-petition pay currently all taxes on the property until the lien and Claim is paid in full.  If the collateral is sold pursuant to the Public Auction described in this Plan, the buyer at the Public Auction will pay off or assume the mortgage and note upon which this claim is based.  Shellpoint will waive its requests for attorney's fees and default rate interest. |

OMC\4840-3933-2019.v1-3/11/20

| **Class 4 Secured Claim of Citizens Bank** | Class 4 consists of the Allowed Secured Claim of Citizens Bank NA, based upon the Citizens retail instalment agreement. The Citizens claim is $13,333.76 pursuant to Citizens' proof of claim, with no prepetition arrears. The collateral is a 2015 Mercedes Benz GLA-250. | NO | YES | The Debtors will retain the vehicle. The Debtors will cure any defaults on the Effective Date, or within six months thereof, whichever is later, and continue to make payments to Citizens, until the lien is satisfied in full.  Citizens shall receive no attorney's fees, default rate interest, or deficiency payment. |
| **Class 5 Secured Claim of Jersey Shore Federal Credit Union** | Class 5 consists of the Allowed Secured Claim of Jersey Shore Federal Credit Union based upon the Jersey Shore retail instalment agreement.  Per the creditor's proof of claim, the claim is $14,811.72 with no prepetition arrears. The collateral is a 2015 Mercedes Benz C300. | NO | YES | The Debtors will retain the vehicle.  The Debtors will cure any defaults on the Effective Date, or within six months thereof, whichever is later, and continue to make payments to Jersey Shore, until the lien is satisfied in full. Jersey Shore shall receive no attorney's fees or default rate interest. |

14

| **Class 6 Secured Claim of Township of Hammonton** | Class 6 consists of the Allowed Secured Claim of the Township of Hammonton, secured by a first position real estate tax lien on the Hammonton Property in the amount of $3,422.92, to the extent Allowed. | NO | YES | The Debtors will pay this Secured Claim upon the sale of the Hammonton Property.  No payments will be made until the sale, but interest will continue to accrue at the statutory rate of 8%. The Township of Hammonton shall not be entitled to default or penalty rate interest. |
|---|---|---|---|---|

**2.        Priority Non-Tax Claims**

Certain priority non-tax claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are entitled to priority treatment. No such claims exist.  The Debtors have no unsecured claims entitled to priority.

**3.        Class of General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a). These claims are to be treated as follows:

15

| CLASS# | DESCRIPTION | IMPAIRED | TREATMENT |
|--------|-------------|----------|-----------|
| | | (Y/N) | |
| Class 7A | Undisputed General Unsecured Claims of creditors. These Claims include all General Unsecured Claims that do not belong to any other class, as well as any other unsecured deficiency claims not otherwise waived by a creditor in this Plan. | YES | Class 7A creditors will receive payment from the Funding Sources as they become available, sharing pro rata treatment with Class 7B, 7C and 7D creditors, until the Debtors have funded the Plan up to the Completion Amount. |
| Class 7B | Nondischargeable General Unsecured Claims. These Claims include the interest and penalty portion of the Claim of the Internal Revenue Service. | YES | Class 7B creditors will receive payment from the Funding Sources as they become available, sharing pro rata treatment with Class 7A, 7C and 7D creditors, until the Debtors have funded the Plan up to the Completion Amount. |

16

| | | | |
|---|---|---|---|
| Class 7C | Friedman Claims.  These Claims include the include the Claim of Kenneth and Randi Friedman, purportedly in the amount of $259,360.00 according to the Friedmans' Proof of Claim. This Claim is subject to objection by the Debtors. | | The Debtors intend to object to the Friedman Claims.  Pending resolution of the Debtors' objection, the Debtors will escrow the portion of each payment to Class 7C creditors. Upon resolution of the Debtors' objection, escrowed monies will be paid to Class 7C consistent with the outcome of the objection. Class 7C creditors will receive payment from the Funding Sources as they become available, sharing pro rata treatment with Class 7A, 7B and 7D creditors, until the Debtors have funded the Plan up to the Completion Amount. |
| Class 7D | Receiver Claims.  These Claims include the Claim of Charles N. Persing as Receiver for HFSL, purportedly in the amount of $182,986.87 according to the Receiver's Proof of Claim.  This Claim is subject to objection by the Debtors. | YES | The Debtors intend to object to the Receiver Claims.  Pending resolution of the Debtors' objection, the Debtors will escrow the portion of each payment to Class 7D creditors. Upon resolution of the Debtors' objection, escrowed monies will be paid to Class 7D consistent with the outcome of the objection. Class 7D creditors will receive payment from the Funding Sources as they become available, sharing pro rata treatment with Class 7A, 7B and 7C creditors, until the Debtors have funded the Plan up to the Completion Amount. |

17

### 4.    Class of Retained Interests

Individual debtors may not retain non-exempt property on account of their prior

ownership of that property.  They may retain non-exempt property on account of a contribution

of new value reasonably equivalent to the retained non-exempt property.

| CLASS# | DESCRIPTION | IMPAIRED | TREATMENT |
|--------|-------------|----------|-----------|
|  |  | (Y/N) |  |
| Class 8 | The Debtors' retained interest in non-exempt estate property. This interest is the non-exempt value in the Primary Residence. | YES | The Debtors will attempt to value the retained non-exempt property via the Public Auction.  If the Primary Residence is sold at the Public Auction, this Class will not receive anything.  If the Debtors exercise their option at the Public Auction and cause the New Value Contribution to be made, the Debtors will retain their entire interest in the Primary Residence on account of that New Value Contribution. |

## E.    Acceptance or Rejection of Plan

Each impaired class of Creditors with claims against the Debtors' estate shall be entitled

to vote separately to accept or reject the Plan. A class of Creditors shall have accepted the Plan if

the Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-half

in number of holders of the allowed Claims of such class that have accepted or rejected the Plan.

In the event that any impaired class of Creditors or Interest Holders shall fail to accept the Plan

18

in accordance with Section 1129(a) of the Bankruptcy Code, the Proponent reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.

**F.      Means of Effectuating the Plan**

**1.      Funding for the Plan**

As discussed in greater detail in the Disclosure Statement Part III.D.3, the Plan will be funded by the following Funding Sources: the liquidation of the Hammonton Property, any nonrefundable deposits or net proceeds of the Public Auction, any federal or state tax refund obtained during the life of the Plan, the proceeds of any Affirmative Litigation, any New Value Contribution and the contributions from the Debtors' disposable income.  The total amount necessary to fund the Plan is the Completion Amount discussed in greater detail in the Disclosure Statement Part II.D.2.

**2.      Post-Confirmation Management**

Since the Debtors are individuals each will act as the manager of their own affairs, but will not have a formal role or compensation.

**3.      Disbursing Agent**

Kimberly Macalusos Hovatter shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agent shall serve without bond and shall receive no compensation for distribution services rendered and expenses incurred pursuant to the Plan.

OMC\4840-3933-2019.v1-3/11/20

## III.

## TREATMENT OF MISCELLANEOUS ITEMS

**A.      Executory Contracts and Unexpired Leases**

**1.      Assumptions**

The following are the unexpired leases and executory contracts to be assumed as obligations of the reorganized Debtors under this Plan:

Hovatter's membership and status as Managing Member of HFSL.

**The Debtors will determine by the Confirmation Date which additional contracts, if any, it intends to assume.**

On the Effective Date, each of the unexpired leases and executory contracts as determined by the Debtors shall be assumed as obligations of the reorganized Debtors. The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each lease and contract. If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**2.      Rejections**

On the Effective Date, all executory contracts not assumed shall be deemed to be rejected. The order confirming the Plan shall constitute an order approving the rejection of the lease or contract. If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Disclosure Statement for the specific date.

OMC\4840-3933-2019.v1-3/11/20

**THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS THE EARLIER OF (I) THE DATE SET FORTH FOR FILING CLAIMS IN ANY ORDER OF THE BANKRUPTCY COURT APPROVING SUCH REJECTION OR (II) THIRTY (30) DAYS AFTER THE CONFIRMATION DATE.**

Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

**B.      Changes in Rates Subject to Regulatory Commission Approval**

This Debtors are not subject to governmental regulatory commission approval of its rates.

**C.      Retention of Jurisdiction**

The Bankruptcy Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, pending the final allowance or disallowance of all Claims affected by the Plan, and to make such orders as are necessary or appropriate to carry out the provisions of this Plan.

In addition, the Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code. If the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if the Debtors or the reorganized debtors elect to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

21

**D.**      **Procedures for Resolving Contested Claims**

Objections to Claims and interests, except for those Claims more specifically deemed

Allowed in the Plan, may be filed by the Reorganized Debtors or any party in interest up to and

including sixty (60) days following the entry of the Confirmation Order. With respect to disputed

Claims, the Disbursing Agent will hold in a separate interest bearing reserve account such funds

as would be necessary in order to make the required distribution on the Claim, as listed either in

the Debtors' schedules or the filed proof(s) of claim.

**E.**      **Notices under the Plan**

All notices, requests or demands with respect to this Plan shall be in writing and shall

be deemed to have been received within five (5) days of the date of mailing, provided they are

sent by registered mail or certified mail, postage prepaid, return receipt requested, and if sent to

the Proponent, addressed to:

Edmond M. George, Esquire
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
1120 Route 73, Suite 420
Mount Laurel, New Jersey 08054

**IV.**

**EFFECT OF CONFIRMATION OF PLAN**

**A.**      **Discharge**

This Plan provides that upon payment of the Completion Amount pursuant to this

Plan, Debtors shall be discharged of liability for payment of debts incurred before

Confirmation, pursuant 11 U.S.C.§ 1141. However, any liability imposed by the Plan will <u>not</u>

be discharged.  If Confirmation of this Plan does not occur, the Plan shall be deemed null and

void. In such event, nothing contained in this Plan shall be deemed to constitute a waiver or

release of any claims against the Debtors or their estate or any other persons, or to prejudice

22

in any manner the rights of the Debtors or their estate or any person in any further proceeding involving the Debtors or their estate. The provisions of this Plan shall be binding upon the Debtors and all Creditors, regardless of whether such Claims are impaired or whether such parties accept this Plan, upon Confirmation thereof.

**B.      Revesting of Property in the Debtors**

Except as provided in Section IV.D. hereinafter, and except as provided elsewhere in the Plan, the Confirmation revests all of the property of the estate in the Debtors.

**C.      Modification of Plan**

The Proponent of the Plan may modify the Plan at any time before Confirmation. However, the Court may require a new disclosure statement or revoting on the Plan if Proponent modifies the Plan before Confirmation.

The Proponent may also seek to modify the Plan at any time after Confirmation so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modification after notice and a hearing.

**D.      Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under §1112(b), after the Plan is confirmed, if there is a default in performing under the Plan. If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, except property included in the Chapter 11 estate under §1115, which has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case.

OMC\4840-3933-2019.v1-3/11/20

**E.      Post-Confirmation Quarterly Fees**

Quarterly fees pursuant to 28 U.S.C. Section 1930(a)(6) continue to be payable to the

office of the United States trustee post-confirmation until such time as the case is converted,

dismissed, or closed pursuant to a final decree.


Dated: March 11, 2020              /s/ Edward J. Hovatter
                                   Edward J. Hovatter

Dated: March 11, 2020              /s/ Kimberly Macaluso Hovatter
                                   Kimberly Macaluso Hovatter