# EXHIBIT "A"

Fill in this information to identify the case:

| | |
|---|---|
| Debtor 1 | EDWARD J HOVATTER |
| Debtor 2 (Spouse, if filing) | KIMBERLY MACALUSO HOVATTER |

United States Bankruptcy Court for the: District of New Jersey

Case number  19-31483

## Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:   Identify the Claim

| | | |
|---|---|---|
| 1. | Who is the current creditor? | 360 CAPITAL, L.L.C. |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor _____ |
| 2. | Has this claim been acquired from someone else? | ☑ No<br>☐ Yes.  From whom? _____ |
| 3. | Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Attn:  John Costello<br>Name<br>1003 Shore Road<br>Number        Street<br>Linwood,          NJ          08221<br>City              State        ZIP Code<br><br>Contact phone  (609) 226-4753<br>Contact email  360caplic@gmail.com | **Where should payments to the creditor be sent? (if different)**<br><br>Name<br>Number      Street<br>City        State        ZIP Code<br><br>Contact phone _____<br>Contact email _____ |
| | | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ |
| 4. | Does this claim amend one already filed? | ☑ No<br>☐ Yes.  Claim number on court claims registry (if known) _____      Filed on _____<br>                                                                       MM  / DD  / YYYY |
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes.  Who made the earlier filing? _____ |

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

6. **Do you have any number you use to identify the debtor?**
☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___  ___  ___  ___

7. **How much is the claim?**   $_____54,400.08* **Does this amount include interest or other charges?**
*Plus additional post-petition interest
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

9. **Is all or part of the claim secured?**
☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**
☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe:   414 S. 14th Street, a/k/a B.2101, L.1.01, Hammonton, NJ

**Basis for perfection:**   _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $____325,000.00
**Amount of the claim that is secured:**   $____54,400.08 *Plus additional post-petition interest
**Amount of the claim that is unsecured:**   $____0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $____54,400.08

**Annual Interest Rate** (when case was filed) 12.00 %
☑ Fixed
☐ Variable

10. **Is this claim based on a lease?**
☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.   $_____

11. **Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:  Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  01 - 10 - 2020
                   MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | John Costello | | |
| | First name | Middle name | Last name |
| Title | Managing Member | | |
| Company | 360 Capital, L.L.C. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1003 Shore Road | | |
| | Number    Street | | |
| | Linwood | NJ | 08221 |
| | City | State | ZIP Code |
| Contact phone | (609) 226-4753 | Email | 360capllc@gmail.com |

# Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## Part 1: Mortgage and Case Information

| | |
|---|---|
| Case number: | 19-31483 |
| Debtor 1: | Edward J. Horvatter |
| Debtor 2: | Kimberly Hovatter |
| Last 4 digits to identify: | |
| Creditor: | 360 Capital, LLC |
| Servicer: | |
| Fixed accrual/daily simple interest/other: | |

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | $50,000.00 |
| Interest due: | 4,400.08 |
| Fees, costs due: | |
| Escrow deficiency for funds advanced: | |
| Less total funds on hand: | |
| Total debt: | $54,400.08 |

## Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal & interest due: | $54,400.08 |
| Prepetition fees due: | |
| Escrow deficiency for funds advanced: | |
| Projected escrow shortage: | |
| Less funds on hand: | - |
| Total prepetition arrearage: | $54,400.08 |

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & interest: | |
| Monthly escrow: | |
| Private mortgage insurance: | |
| Total monthly payment: | |

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | NO PAYMENTS HAVE BEEN MADE | | | | | | | | | | | | |

|  |  |  |  |
|---|---|---|---|
| | Account Activity | | |
| | | How Funds Were Applied/Amount Incurred | |
| | | | Balance After Amount Received or Incurred |

page 1 of



# Atlantic County
# Document Summary Sheet

ATLANTIC COUNTY CLERK

5901 MAIN ST

MAYS LANDING NJ 08330 1797

ATLANTIC COUNTY, NJ
EDWARD P. McGETTIGAN, COUNTY CLERK
RECORDED 02/28/2019 15:13:53
RCPT # 1455466    RECD BY E-RECORD
NAME FEE
RECORDING FEES 162.00
INSTRUMENT# 2019010808
VOL 14568  PAGE 1 OF 16
**Official Use Only**

| Transaction Identification Number | | 3739564 | 3267264 |
|---|---|---|---|
| Submission Date *(mm/dd/yyyy)* | 02/19/2019 | **Return Address** *(for recorded documents)* | |
| No. of Pages *(excluding Summary Sheet)* | 14 | RELIANT LAND SERVICES | |
| Recording Fee *(excluding transfer tax)* *(Convenience Charge of $2.00 included)* | $162.00 | 591 MANTUA BLVD # 201 SEWELL, NJ 08080 | |
| Realty Transfer Tax | $0.00 | | |
| Total Amount | $162.00 | | |
| Document Type | MORTGAGE | | |
| **Municipal Codes** HAMMONTON | 16 | | |
| Batch Type | L2 - LEVEL 2 (WITH IMAGES) | | |
| | 248887 | | |

**Additional Information (Official Use Only)**

***\* DO NOT REMOVE THIS PAGE.***
***COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF ATLANTIC COUNTY FILING RECORD.***
***RETAIN THIS PAGE FOR FUTURE REFERENCE.***



# Atlantic County
# Document Summary Sheet

| MORTGAGE | | |
|---|---|---|

| Type | MORTGAGE |
|---|---|
| Consideration | $50,000.00 |
| Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) |
| Document Date | 02/19/2019 |
| Reference Info | |

| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|
| | | | | |

| MORTGAGOR | Name | Address |
|---|---|---|
| | EDWARD J HOVATTER | 920 PLEASURE AVENUE, OCEAN CITY, NJ 08226 |
| | KIMBERLY A HOVATTER | 920 PLEASURE AVENUE, OCEAN CITY, NJ 08226 |

| MORTGAGEE | Name | Address |
|---|---|---|
| | 360 CAPITAL LLC | 1003 SHORE ROAD, LINWOOD, NJ 08221 |

| Parcel Info | | | | | |
|---|---|---|---|---|---|
| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
| | 16 | 2101 | 1.01 | | 16 |

*DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF ATLANTIC COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

**RECORDING REQUESTED BY:**
Edward J. Hovatter, Esquire
1000 Haddonfield-Berlin Road
Suite 209
Voorhees, NJ 08043

**WHEN RECORDED MAIL TO:**
Edward J. Hovatter, Esquire
1000 Haddonfield-Berlin Road
Suite 209
Voorhees, NJ 08043

## PURCHASE MONEY MORTGAGE AND SECURITY AGREEMENT

THIS PURCHASE MONEY MORTGAGE AND SECURITY AGREEMENT ("this Mortgage") is given February _19th_, 2019 by Edward J. Hovatter and Kimberly A. Hovatter, husband and wife, with a mailing address of 920 Pleasure Avenue, Ocean City, NJ 08226 (the "Borrower") to 360 Capital LLC, a New Jersey limited liability company at 1003 Shore Road, Linwood, New Jersey 08221, (the "Lender").

1.    Note. The Lender has given the Borrower a loan for the continued construction-related improvements to the Property (defined below)(the "Loan") in the amount of Fifty Thousand ($50,000.00) Dollars (from now on called the "principal"). In return for the Loan, the Borrower has signed a Mortgage Note dated the same date as this Mortgage (the "Note"), under which the Borrower has promised to pay the principal to the Lender, together with interest, on the terms stated in the Note. All of the terms of the Note are made a part of this Mortgage.

2.    Mortgage as Security. The purpose of this Mortgage is to give the Lender security for (a) the payment of the principal, interest, and all other amounts due under the Note, this Mortgage, and all other documents evidencing or securing the Loan (collectively, the "Loan Documents"), and (b) the performance of the Borrower's obligations under the Loan Documents (the "Borrower's Loan Obligations"). The Borrower mortgages to the Lender the property described in Sections 2.1 through 2.7 below (collectively, the "Property"):

2.1    Land. All of the land located at 414 S. 14th Street, Hammonton, Atlantic County, State of New Jersey and designated as Block 2101, Lot 1.01 on the Town of Hammonton Tax Map.

2.2    Improvements. All buildings and other improvements that now are or will be located on the Land.

2.3    Fixtures and Equipment. All fixtures, equipment, and personal property that now are or will be attached to or used with the Land, buildings, and other improvements.

2.4    Rents and Leases. All rents and leases relating to the Land (collectively, the "Leases").

2.5    Building Materials. All building materials, building machinery, and building equipment owned by the Borrower and delivered on site to the Land during the course of, or in connection with, the construction of or reconstruction of any buildings and improvements on the Land from time to time during the term of this Mortgage.

2.6     Proceeds. All proceeds of the conversion, voluntary or involuntary, of any of the above described property into cash or liquidated claims, including insurance proceeds and condemnation awards.

2.7     Other Rights. All other rights that the Borrower now has or will acquire with regard to the Land, including (a) water and water rights, water courses, and ditch rights and (b) mineral, oil, gas, geothermal, and similar rights, royalties, and profits.

3.     Mortgage Void on Payment in Full. When the Borrower pays all amounts due under the Note and this Mortgage, the Lender's rights under the Note and this Mortgage will end. At the request and expense of the Borrower, the Lender will discharge this Mortgage of record.

4.     Promises of Borrower. The Borrower makes these promises to the Lender:

4.1     Compliance. The Borrower will comply with all of the terms of the Note, this Mortgage, and the other Loan Documents.

4.2     Payments. The Borrower will make all payments due under the Note, this Mortgage, and the other Loan Documents.

4.3     Ownership. The Borrower owns fee simple title to the Property and has the right to mortgage the Property to the Lender. The Borrower will defend this ownership against all claims.

4.4     Liens and Encumbrances. The Borrower's title to the Property is free and clear of all encumbrances other than those approved and accepted by the Lender.

4.5     Duty to Maintain. The Borrower will keep and maintain the Property in good and tenantable condition (to a level at least equal to that existing as of the date of this Mortgage) and will promptly perform all repairs, replacements, and maintenance necessary or proper to preserve its value.

4.6     Payment of Taxes and Charges. Within thirty (30) days of the date when due, the Borrower will pay or cause to be paid all real estate taxes, assessments, water and sewer charges, and other charges against the Property (collectively, "Taxes and Charges"), and will deliver to the Lender receipts evidencing the timely payment of these charges. However, the Borrower may withhold payment of any Taxes and Charges so long as (a) the Lender's interest in the Property is not jeopardized, (b) such Taxes and Charges are currently are being contested diligently and in good faith by appropriate proceedings, and (c) the Borrower has set aside adequate reserves or made other adequate financial arrangements that are acceptable to the Lender for paying the contested amounts if and when the contest is decided.

4.7     No Credit For Taxes Paid. The Borrower will not claim or be entitled to any credit against the principal or interest under the Note and this Mortgage for taxes paid on the Property.

4.8     Insurance.

(a)     The Borrower will maintain or cause to be maintained commercial general liability insurance on the Property in an amount not less than $500,000.00 single limit per occurrence, with umbrella liability coverage of not less than $1,000,000.00.

(b)    (i)    The Borrower will maintain hazard insurance on the Property. This insurance must cover loss or damage caused by fire and other hazards normally included under "extended coverage" insurance. This insurance must also include such other hazard coverage as the Lender may reasonably require. The Lender may require that the amount of coverage be the greater of (1) the principal of the Note or (2) the current replacement cost of the buildings and other improvements on the Property, to the extent available. The coverage must be furnished by one insurance company. There can be no coinsurance or sharing of the risk by more than one company.

(ii)    All hazard insurance policies will include a "standard mortgagee clause" naming the Lender. All insurance proceeds will be paid to the Lender. If loss or damage occurs, the Borrower will promptly notify the Lender and the insurance company. The Borrower will promptly file a proof of loss with the insurance company and settle the claim. If not, the Lender may do so. The Lender may use the insurance proceeds received, in the Lender's sole discretion, (1) to repair and restore the Property, or (2) to reduce the principal. This will not change the due dates of the payments under the Note. The Lender will pay to the Borrower any money left after paying the entire principal and interest.

(iii)    The Borrower will also maintain such other insurance coverages as the Lender may reasonably require.

(iv)    The Borrower must pay all premiums when due.

(v)    All insurance must (1) be in form and content acceptable to the Lender; (2) be issued by an insurer acceptable to the Lender that is licensed in the state where the Property is located and has a Best's financial rating of A or better and a size class rating of X or larger; (3) provide thirty (30) days' advance written notice to the Lender before any cancellation, material modification, or notice of non-renewal; and (4) provide that no claim will be paid without ten (10) days' advance written notice to the Lender. All policies will name the Lender as an additional insured. All deductibles will be in amounts acceptable to the Lender. If this Mortgage is foreclosed or if any other transfer of title to the Property is made in full or partial satisfaction of the debt secured by this Mortgage, all of the Borrower's right, title and interest in and to all insurance policies then in force will pass to the transferee of the Property. If the insurance or any part of it expires, is withdrawn, or becomes void or recovery is denied because of the Borrower's breach of any condition thereof, or because of the value or impairment of the capital of any insurance carrier, or if for any reason the insurance is unsatisfactory to the Lender, the Borrower will obtain new insurance that satisfies the requirements of this subsection (v).

(vi)    Concurrently with the signing of this Mortgage and at least thirty (30) days before the expiration of each policy, the Borrower will deliver to the Lender certificates and endorsements evidencing that insurance complying with this Section 4.8 has been issued, is in effect, and has been paid in full for the current policy year. The Borrower will also deliver to the Lender, promptly on the Lender's request, certified copies of all insurance policies (including all endorsements). If the Borrower does not comply with the preceding two sentences, the Lender will have the right, but not the obligation, to purchase the required insurance for the Lender's interests only. Any amounts paid by the Lender for such insurance will become part of the debt secured by this Mortgage, will be immediately payable by the Borrower to the Lender and will bear interest at the "Default Rate" (as defined in the Note).

(c)    The Borrower will promptly notify the Lender of any loss, whether or not covered by the insurance required under this Mortgage.

**4.9**    <u>Damage/Inspection</u>. The Borrower will not damage, destroy or abandon the Property. The Lender may inspect the Property on reasonable notice to the Borrower.

**4.10**    <u>Changes in Property</u>. The Borrower will not do any of the following to the Property without the Lender's prior written consent:

**(a)**    Excavate on, remove fill from, or grade the Property, or construct or demolish any buildings or other improvements on the Property. Without limiting the preceding sentence, the Borrower or will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel, or rock products without the Lender's prior written consent. However, nothing contained in in this subsection (a) will preclude the Borrower from conducting, at the Borrower's expense, ground tests, soil analyses, topographical surveys, engineering studies, and other physical examinations of the Property consistent with the provisions of this Mortgage as the Borrower may deem necessary.

**(b)**    Remove, demolish or materially alter any buildings or other improvements. For purposes of this Mortgage, a "<u>material alteration</u>" means any alteration (or related series of alterations) that (1) costs more than $10,000.00, or (2) involves any structural or weight-bearing element, or the roof, of such buildings or improvements.

**(c)**    Remove any fixtures. If any fixture is destroyed or removed, the Borrower will replace it with another of at least equal quality, condition, and function.

**(d)**    Give a security interest in any fixtures.

If the Borrower defaults under this Section 4.10, all costs and expenses of restoring the Property to its former condition will be added to the principal and will be secured by this Mortgage.

**4.11**    <u>Eminent Domain</u>. Eminent domain is the right to lawfully condemn and take private property for a public purpose. Fair value must be paid for the taking. The taking may occur either by court order or by deed to the condemning party. The Borrower will assign to the Lender any payment received for the taking. The Lender may, in the Lender's sole discretion, use the payment to (1) repair or restore the Property or (2) reduce the principal. This will not change the due dates of the payments under the Note. The Lender will pay to the Borrower any money left after paying the entire principal and interest.

**4.12**    <u>Statement of Amount Owing</u>. The Lender may require the Borrower to sign a notarized statement of the amount owing under the Note and this Mortgage. The Borrower will sign the statement within ten (10) days after the Lender's written request. The Borrower will add to the statement anything that the Borrower believes may reduce the amount owing. The Lender will prepare the statement at no cost to the Borrower.

**4.13**    <u>No Other Liens</u>. In this Mortgage, a lien is a legal claim of another against property for (a) the payment of a debt or (b) the performance of an obligation. This Mortgage is a superior lien in favor of the Lender against the Property to secure payment of the Note. A superior lien would be entitled to be paid before any junior lien on a judicial sale of the Property. A junior lien would be entitled to be paid after this Mortgage on a judicial sale of the Property.

4.14    Obeying the Law. Without limiting anything contained in Section 4.15 below, the Borrower will obey all laws, statutes, codes, rules, ordinances, and court orders that apply to the Property (collectively, "Applicable Law"), including the Americans with Disabilities Act. The Borrower will not use or allow the Property to be used for any illegal purpose.

4.15    Environmental Obligations. The Borrower represents and warrants to, and covenants with, the Lender as follows:

(a)    No "Hazardous Substance" (as defined below) is present on or emanating from the Property in amounts, or is handled, generated or stored in a manner, that requires remediation under any "Environmental Law" (as defined below). The Borrower has not been identified in any litigation, administrative proceeding, or investigation as a responsible party for any liability under any Environmental Law.

(b)    For purposes of this Mortgage:

(i)    "Hazardous Substance" means all of the following:

(1)    Any hazardous or toxic substance, pollutant, or contaminant, as defined in (A) Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. Section 9601, as amended by the Superfund Amendments and Re-authorization Act of 1986 (Pub. L. No.99-499, 100 Stat. 1613 (1986) (SARA) or 40 CFR Part 261, (whichever is applicable); (B) all regulations for and amendments to the foregoing, now existing or later enacted.

(2)    Transformers or other equipment that contain polychlorinated biphenyls.

(3)    Underground storage tanks and related equipment or apparatus, including those that are used to store or transport Hazardous Substances, or that contain heating oil or any other Hazardous Substances.

(4)    Any other chemical, material or substance, exposure to which is prohibited, limited, or regulated by any governmental authority or which may or could pose a hazard to the health and safety of the occupants of the Property or to others.

(5)    If at any time it is determined that the Property contains any of the equipment or substances described above, then the Borrower will be solely responsible for and will pay for all costs incurred in connection with the removal of such equipment and substances.

(ii)    "Environmental Laws" means the laws mentioned above and any other Applicable Law relating to the environment.

(c)    The Borrower will not engage in any activity on the Property (intentional or unintentional), or permit others to engage in any activity, that would result in contamination of the Property (or any part of the Property) or cause the contamination of any other property by reason of any Hazardous Substances.

(d)    The Borrower will cause its tenants to operate at the Property in compliance with all applicable Environmental Laws and has not permitted, and will not permit, any tenant or occupant of the

5

Property to engage in any activity with respect to generating, treating, processing, storing, recycling or disposing of any Hazardous Substances that could impose environmental liability on such tenant or occupant, on the Borrower, or on any other owner of any of the Property.

(e)    The Borrower will not place, or permit to be placed, any underground storage tank on the Property.

(f)    In addition to the other Events of Default stated elsewhere in this Mortgage, if any party or entity responsible for enforcing Environmental Laws (an "Authority") issues any violation, complaint, order, or citation with respect to any Environmental Law, or spends money to respond to a release of Hazardous Substances at the Property, that event will constitute an "Event of Default" (as defined below) under this Mortgage.

(g)    The Lender's right to inspect the Property under this Mortgage includes the right to conduct any testing of the Property, including soil borings, that the Lender may decide.

(h)    The Borrower also agrees as follows:

(i)    The Borrower will promptly supply to the Lender true and complete copies of (1) all notices, or correspondence and submissions made by the Borrower to, or received by the Borrower from, the United States Environmental Protection Agency, the United States Occupational Safety and Health Administration, or any other local, state or federal authority concerning environmental matters or Hazardous Substances, and (2) all sampling and test results from any samples or tests taken at or in the vicinity of the Property.

(ii)    The Borrower will fully comply with all Environmental Laws relating to or affecting the Property and will promptly provide the Lender with satisfactory evidence of compliance.

(iii)    The Borrower will give notice to the Lender immediately upon the Borrower's acquiring knowledge of (1) any and all enforcement, cleanup, removal, or other governmental or regulatory actions instituted, completed, or threatened by any governmental or other Authority having jurisdiction; (2) all claims made or threatened by any third party against the Borrower or the Property relating to damage, contribution, cost recovery, compensation, loss, or injury resulting from any Hazardous Substances or the contamination of the Property by Hazardous Substances or the contamination of any other property as a result of Hazardous Materials emanating from the Property (collectively, "Hazardous Substances Contamination"); and (3) the presence of, together with a full description of, any Hazardous Substances on the Property or any Hazardous Substances Contamination.

(iv)    The Borrower is liable for, and will indemnify and save harmless the Lender from, all fines, suits, procedures, claims, actions, damages, and liabilities of any kind (including attorneys' fees) arising out of or in any way connected with the generation, use, storage, or handling by the Borrower of, or any spills or discharges by the Borrower of, Hazardous Substances at the Property, or arising out of the Borrower's failure to comply with this Section 4.15(h).

(v)    Notwithstanding anything to the contrary contained in this Mortgage, the Borrower's obligations under this Section 4.15(h), including the indemnity contained in the previous subsection (iv), will survive the payment of the Note or the exercise by the Lender of any of its remedies under the Note or this Mortgage, including a transfer of the Property, or any portion of it, by foreclosure or by deed in lieu of foreclosure.

4.16    Separateness. Until all of the Borrower's Loan Obligations are paid and satisfied in full, the Borrower will remain a separate, independent, "single purpose" entity. This means, without limitation, that the Borrower (a) will maintain its entity existence and keep it good standing in the State of New Jersey, (b) will not engage in any business, and will have no purpose, unrelated to the Property, (c) will not acquire or own any real estate other the Property, and (d) will not acquire, merge, or consolidate with any other entity that owns any other real estate.

4.17    Survival. The representations, warranties, and agreements made by the Borrower in this Mortgage will survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as the Borrower's Loan Obligations are paid and satisfied in full.

5.    Tax and Insurance Escrow. In this Mortgage, escrow is the delivery of money to the Lender to pay expenses of the Property. If the Lender requests after an Event of Default occurs (or any event occurs which, with the giving of notice or passage of time or both, would constitute an Event of Default), the Borrower will pay to the Lender (a) one-twelfth (1/12) of the yearly real estate taxes and/or (b) one-twelfth (1/12) of the yearly hazard insurance premiums. These payments will be made monthly. They will be held in escrow by the Lender to pay the taxes and the insurance premiums when due. The Lender may adjust these amounts from time to time to reflect changes in the taxes and insurance premiums.

6.    Security Agreement.

6.1    UCC Security Agreement. This Mortgage constitutes a Security Agreement under the Uniform Commercial Code and creates a security interest in all fixtures and personal property (and all replacements and proceeds thereof) included in the Property.

6.2    Filings by Lender. The Lender may execute, file, and refile any financing statements, continuation statements, or amendments required from time to time to confirm or perfect the lien of this Mortgage with respect to such fixtures and personal property. Upon an Event of Default, the Lender will have, in addition to any other rights and remedies under this Mortgage, the Note, or the other Loan Documents, all of the rights and remedies granted to a secured party under the Uniform Commercial Code with respect to all personal property. Even if there is a release of any or all of that part of the Property which constitutes real property, or even if this Mortgage is foreclosed or satisfied of record, the terms of this Section 6 will survive as a security agreement until payment and satisfaction in full of all of the Borrower's Loan Obligations.

6.3    Debtor Name and Address. The name and address of the Borrower (as Debtor under the Uniform Commercial Code) are:

Edward J. & Kimberly A. Hovatter
920 Pleasure Avenue
Ocean City, NJ 08226

6.4    Secured Party Name and Address. The name and address of the Lender (as Secured Party under the Uniform Commercial Code) and the address from which information concerning the security interests created under this Mortgage may be obtained are:

360 Capital LLC
Attn: John Costello

7

1003 Shore Road
Linwood, NJ 08221

**THIS MORTGAGE WILL BE EFFECTIVE FROM THE DATE OF ITS RECORDING AS A FINANCING STATEMENT FILED AS A FIXTURE FILING WITH RESPECT TO ALL GOODS CONSTITUTING PART OF THE PROPERTY THAT ARE OR ARE TO BECOME FIXTURES.**

6.5     <u>Assembling Personal Property</u>. Upon an Event of Default, and to the extent allowed by Applicable Law, the Mortgagor will assemble any personal property that is not affixed to the Property in a manner and at a place reasonably convenient to the Lender, and will make it available to the Lender within three (3) days after receipt of written demand from the Lender.

7.     <u>Assignment of Rents and Leases</u>. As further security for the Note, the Borrower assigns to the Lender the Borrower's rights under all existing or future Leases relating to the Property, and all rents and income under the Leases. This is an absolute assignment, but the Borrower will have the license to collect and utilize the rents under the Leases unless and until an Event of Default. If an Event of Default occurs, the Lender will, in addition to all of its other rights and remedies, have the right to notify all tenants of the Property to make all rent and other payments under the Leases directly to the Lender, and will also have the right to collect those payments. For this purpose, the Borrower authorizes the Lender to endorse checks that are made payable to the Borrower.

8.     <u>Required Notices</u>. The Borrower will notify the Lender promptly if any of the following occurs:

8.1     <u>Casualty</u>. A fire or other casualty causing damage to the Property.

8.2     <u>Condemnation</u>. The Borrower receives notice of eminent domain proceedings or condemnation of all or any part of the Property.

8.3     <u>Government Notice</u>. The Borrower receives notice from any governmental authority relating to the structure, use, or occupancy of the Property, or any release of Hazardous Substances at, from, or onto the Property.

8.4     <u>Tenant Notice</u>. The Borrower receives any default or termination notice from any tenant of all or any portion of the Property.

8.5     <u>Other Debt</u>. The Borrower receives any default or acceleration notice from the holder of any other lien or security interest in all or any part of the Property.

8.6     <u>Litigation</u>. Any material litigation affecting the Property is commenced.

8.7     <u>Construction Liens</u>. Any work is commenced, or any services or furnished, or any materials are supplied to the Property, if any construction lien, mechanic's lien, materialmen's lien, or other lien could be asserted against the Property on account of the work, services, or materials. The Borrower will also notify the Lender at least fifteen (15) days before beginning any material alterations.

9.     <u>Payments by Lender</u>.

9.1     <u>Types of Payment</u>. The Lender may pay any of the following expenses of the Property when due if the Borrower does not: (a) real estate taxes, assessments, water charges, and sewer charges;

(b) all other charges; (c) insurance premiums; (d) repairs and maintenance, and (e) payments of claims against the Property if necessary to protect the Lender's rights under this Mortgage.

9.2     Added to Principal; Default Interest. All payments made by the Lender will be added to the principal. The Borrower will pay these amounts to the Lender on written demand. Interest will be charged at the Default Rate from the time of payment by the Lender.

10.     Lender's Right to Accelerate. The Lender has the right, called acceleration, to declare the entire unpaid principal under the Note and this Mortgage due immediately for any one of the following causes (each, an "Event of Default"):

10.1     Failure to Pay Note. The failure of the Borrower to make any payment of principal or interest within applicable grace, notice, and cure periods (if any) under the Note.

10.2     Default Under Loan Documents. An Event of Default under any of the other Loan Documents.

10.3     Change in Ownership. Any transfer of, or any change in, the ownership of all or any part of the Property (each, a "Prohibited Transfer"). The term "Prohibited Transfer" includes the following, whether accomplished in a single transaction or series of transactions:

(a)     A sale or transfer of the Property or any right or interest in the Property, whether legal, beneficial, or equitable and whether voluntary or involuntary, including via deed, easement, installment sale contract, land contract, leasehold with a term longer than three (3) years, or by assignment or transfer of any beneficial interest in or to any trust holding title to the Property.

(b)     A transfer or change of ownership resulting from the death of any Borrower that is a natural person.

(c)     The change of ownership of a majority of a corporate borrower's shares.

(d)     The change of ownership of a majority of the partnership interests of a borrower that is a partnership.

(e)     The change of ownership of a general partner's interest in a limited partnership, or the substitution of a new general partner.

(f)     The change of ownership a majority of the members' interest in a borrower that is a limited liability company, or the substitution of a new manager, except that this subsection (f) does not prohibit transfers of member interests among the Borrower's current members, provided that Edward J. Hovatter and Kimberly A. Hovatter, retain a majority of the beneficial ownership of, and the right to control or direct control of the business of, the Borrower.

10.4     Untrue Statements. If any statement, representation or warranty of the Borrower is untrue, inaccurate, or misleading in any material respect as of the time when it was made.

10.5     Other Foreclosures. The starting of foreclosure or execution proceedings by the holder of any other mortgage or lien on the Property.

**10.6    Dissolution.** The liquidation or dissolution of, or cessation of business by, the Borrower.

**10.7    Bankruptcy or Insolvency.** The starting of bankruptcy, receivership, or insolvency proceeding by or against the Borrower.

**10.8    Judgments.** If any final judgment, order or decree is rendered against the Borrower or any Guarantor exceeding $50,000 and the judgment remains outstanding or undischarged for a period of thirty (30) days.

**10.9    Government Investigations.** If any governmental entity begins an investigation, or if any indictment, charge, or proceeding is filed or commenced, whether criminal or civil, pursuant to federal or state law against the Borrower or any of its officers, directors, managers, or equity owners that may result in seizure or forfeiture of any of the property or assets of the Borrower.

**10.10    Abandonment.** If the Borrower abandons the Property in whole or in part.

**10.11    Defective Collateral.** If this Mortgage or any of the other Loan Documents is no longer in full force or effect, including the failure of any Loan Document to create a valid security interest or lien.

**10.12    Other Defaults.** If any violation of or failure to comply with this Mortgage occurs other than those specified in Sections 10.1 through 10.11 above (each, an "Other Default"), and such Other Default is not cured within fifteen (15) days after Default Notice, except that:

(a)    If the Other Default cannot reasonably be cured within fifteen (15) days, the cure period will be extended (i) if affirmative steps that will cure such default (which steps are reviewed and approved in advance by the Lender in its sole discretion) are initiated within fifteen (15) days after Default Notice and the cure is diligently pursued to completion, but in no event will the cure period exceed thirty (30) days.

(b)    The Lender will not obligated to give, and the Borrower will not entitled to receive, Default Notice more than twice during the term of the Loan for the same Other Default. If this happens, the next Other Default will constitute an Event of Default.

The Lender's failure to declare acceleration for any Event of Default will not prevent the Lender from declaring acceleration for any Event of Default occurring at a later time.

**11.    Some of Lender's Rights on Acceleration.** If the Lender declares acceleration, the Borrower will immediately pay to the Lender the entire unpaid principal and interest. If the Borrower does not, the Lender has all rights given to mortgage lenders by law or in equity, for example:

**11.1    Possession.** To enter and take possession of the Property in a lawful way.

**11.2    Receiver.** To ask a court to appoint a receiver of rents of the Property. The Borrower consents to the appointment of a receiver.

**11.3    Foreclosure.** To start a court action for foreclosure. Foreclosure is a court ordered sale of the Property. The proceeds of the sale are used to pay the principal due under the Note and this Mortgage, plus costs. The Property may be sold in one or several parcels.

**11.4    UCC Rights.** With respect to the personal property included in the Property, any or all of the rights of a secured party under this Mortgage, the Uniform Commercial Code, and any other Applicable Law.

**11.5    Sale of Property.** To the extent permitted by Applicable Law, to sell all or part of the Property together or separately, in one sale or by separate sales.

**11.6    Tenancy.** If the Borrower remains in possession of the Property after the Property is sold as provided in this Mortgage or in the other Loan Documents, or if the Lender otherwise becomes entitled to possession of the Property upon an Event of Default, the Lender may treat the Borrower as a tenant at sufferance and in that case the Borrower will, at the Lender's option, either (a) pay a reasonable rental for the use of the Property, or (b) vacate the Property immediately upon the Lender's demand.

**12.    Notices.** All notices, requests, demands, or other communications required or permitted under this Mortgage (each, a "Notice") must be in writing. Each party must accept and claim the Notices given by the other. Notices may be given by personal delivery (including delivery via Federal Express, Express Mail or by similar overnight delivery) or by depositing same in the United States mails, certified or registered. Notices will be addressed to the other party at the address written at the beginning of this Mortgage, and will be effective on receipt or refusal of receipt. Either party may notify the other of a change of address.

**13.    Business Purpose.** The Borrower certifies that this Mortgage is delivered in connection with a business or commercial transaction.

**14.    Mortgage Binding on Successors.** This Mortgage is binding on all Borrowers and all those who lawfully succeed to their rights or take their places.

**15.    Further Documents and Acts.** The Borrower agrees that at any time and from time to time upon the Lender's request, the Borrower will execute, acknowledge and deliver other assurances, financing statements, documents, agreements, and amendments or supplements to this Mortgage and take such other action as may reasonably be required, in order to (a) correct any errors or omissions in this Mortgage, (b) confirm this Mortgage or its lien priority, or (c) carry out the intention of or facilitate the performance of this Mortgage.

**16.    Miscellaneous.**

**16.1    Payment of Expenses.** The Borrower will pay or reimburse all reasonable expenses and fees, including attorneys' fees and costs, incurred or established from time to by the Lender in connection with (a) servicing, administering, or auditing the Loan, and (b) giving Notices.

**16.2    Collection Costs.** If the Lender incurs any cost or expense, including attorneys' fees and costs, in connection with collecting, enforcing, or protecting its interest with respect to the Loan or under the Loan Documents, whether before or after an Event of Default, the Borrower will pay or reimburse all of such costs and expenses. Prior to maturity (whether as stated in the Note or by acceleration), such costs and expenses will bear interest at the regular rate stated in the Note. From and after maturity, such costs and expenses will bear interest at the Default Rate until paid or reimbursed.

16.3    No Merger. No interest or estate created under this Mortgage will merge with any other interest or estate in the Property at any time held by or for the benefit of the Lender, unless the Lender gives its express written consent.

16.4    Time of the Essence. Time is of the essence for the performance of the Borrower's obligations under this Mortgage.

16.5    Delays and Waivers. No delay or failure by the Lender to exercise any right, power or remedy under this Mortgage or any other Loan Document will constitute a waiver. Any waiver, permission, consent, or approval by the Lender relating to the Loan must be in writing, must be signed by a properly authorized person of the Lender, and will be effective only to the extent specifically stated.

16.6    Purchase Money Mortgage. This Mortgage is a purchase money mortgage and will be entitled to all benefits of the lien priority provisions under the laws of the State of New Jersey.

16.7    Interpretation. For purposes of this Mortgage:

(a)    Reference to one gender will be deemed to include the masculine and the feminine, and the singular will be deemed to include the plural and the plural the singular, as the context may require.

(b)    Except where the context otherwise clearly indicates, the word "will" as used in this Mortgage means "shall" and denotes something mandatory.

(c)    Except as otherwise stated in this Mortgage, the terms "herein," "hereof," and "hereunder" refer to this Mortgage in its entirety and are not limited to any specific Section.

(d)    The word "including" means "including without limitation" and "including but not limited to."

(e)    The word "Borrower" includes all borrowers under this Mortgage. The Lender and any other holder of this Mortgage may transfer this Mortgage and the Note it secures. The word "Lender" includes (i) the original Lender and (ii) anyone who takes this Mortgage by transfer.

(f)    Any rule of construction which provides that ambiguities are to be resolved against the drafting party will not apply to the interpretation of this Mortgage or the other Loan Documents.

16.8    Entire Agreement. This Mortgage and the other Loan Documents constitute and express the whole agreement of the parties. All prior promises, undertakings, representations, agreements, understandings and arrangements relating to the Loan are merged into this Mortgage and the other Loan Documents.

16.9    Headings. The section and other headings contained in this Mortgage are for reference purposes only and do not control or affect its interpretation or meaning.

16.10    Governing Law. This Mortgage will be governed by and construed according to the laws of the State of New Jersey. This Mortgage has been accepted by the Lender in the State of New Jersey.

16.11    <u>Severability.</u> If any section or provision of this Mortgage, or its application to the Borrower or the Lender is held invalid, such invalidity will not affect other provisions or applications of this Mortgage.

16.12    <u>Amendments.</u> This Mortgage may be amended only by a written agreement executed in the same manner as this Mortgage. The term "Loan Documents" as used in this Mortgage includes all amendments to them.

17.    <u>Waiver of Jury Trial</u>. Any and all disputes arising out of or under this Mortgage will be litigated in the State of New Jersey and decided by a judge sitting without a jury. The Borrower waives all rights to a trial by jury on any matters in dispute. The Borrower also consents to and confers personal jurisdiction on courts of the State of New Jersey or courts of the federal government sitting in the State of New Jersey, and waives any objections as to venue in any of those courts, and agrees that service of process may be made on the Borrower by mailing a copy of the summons to the Borrower at Borrower's address stated at the beginning of this Mortgage.

18.    <u>Instrument under Seal</u>. This Mortgage is given under seal and it is intended that this Mortgage will have the effect of a sealed instrument according to Applicable Law.

19.    <u>Acknowledgment</u>. The Borrower acknowledges that it has read all of the provisions of this Mortgage and agrees to its terms. The Borrower also acknowledges that it has received a completed copy of this Mortgage.

**THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK.
SEE ATTACHED SIGNATURE AND ACKNOWLEDGMENT PAGE.**

The Borrower agrees to all of the terms of this Mortgage by signing below.

WITNESS OR ATTEST:                          BORROWER:

_____            _____
                                            Edward J. Hovatter

                                            _____
                                            Kimberly A. Hovatter

STATE OF NEW JERSEY              :
                                 : SS
COUNTY OF Gloucester             :

BE IT REMEMBERED, That on this 19 day of February 2019, before me, the subscriber, personally appeared Edward J. Hovatter and Kimberly A. Hovatter, who acknowledged themselves are authorized to execute this Mortgage for the purposes stated herein.

_____

KIMBERLY ANN GALLOWAY
NOTARY PUBLIC OF NEW JERSEY
I.D. # 2452814
My Commission Expires 6/16/2020

14